## PEOPLE v CICOTTE

Docket No. 67727. Submitted November 14, 1983, at Lansing.—Decided February 13, 1984.

James J. Cicotte was convicted of first-degree criminal sexual conduct by a jury in Grand Traverse Circuit Court and was sentenced, Charles M. Forster, J. Defendant appeals. *Held:*

1. The search without a warrant of the pockets of defendant's clothing and the subsequent seizure of evidence from the pockets did not violate defendant's Fourth Amendment rights. The search and seizure was lawful.

2. The granting of defendant's motion for a mistrial in his first trial did not preclude his retrial where there was no evidence of bad faith conduct on the part of either the judge or the prosecutor.

3. Defendant's contentions that he was denied effective assistance of counsel are either without merit or are precluded from appellate review.

Affirmed.

1. Aᴘᴘᴇᴀʟ — Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Eᴠɪᴅᴇɴᴄᴇ — Cᴏɴsᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ —·
Sᴇᴀʀᴄʜᴇs ᴀɴᴅ Sᴇɪᴢᴜʀᴇs.

The Court of Appeals may disregard the procedural impediment and review a constitutional question regarding the propriety of

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 548, 549, 574.

29 Am Jur 2d, Evidence § 426.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.

[2, 3] 68 Am Jur 2d, Searches and Seizures § 93.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.

[3] 68 Am Jur 2d, Searches and Seizures § 97.

[4] 21 Am Jur 2d, Criminal Law §§ 264, 291, 295.

[5-7] 21A Am Jur 2d, Criminal Law §§ 984, 985.

Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

a search by which evidence against a defendant is obtained where the defendant raises the question for the first time on appeal and where the evidence resulting from the search may have been outcome determinative in the lower court action.

2. CRIMINAL LAW — EVIDENCE — SEARCHES AND SEIZURES.

The effects in the possession of an accused at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing and the taking of the property for use as evidence.

3. CRIMINAL LAW — CONSTITUTIONAL LAW — EVIDENCE — SEARCHES AND SEIZURES.

It is consistent with the Fourth Amendment for police to search without a warrant any container or article in an arrestee's possession as part of an established inventory procedure.

4. CRIMINAL LAW — MISTRIAL — DOUBLE JEOPARDY.

The Double Jeopardy Clause does not bar retrial where a mistrial is granted on a defendant's motion unless the motion was induced by bad faith conduct on the part of the judge or prosecutor.

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations, and not make a serious mistake but for which defendant would have had a reasonably likely chance for acquittal.

6. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

Generally, a motion for a new trial is a prerequisite to appellate review of a claim of ineffective assistance of counsel; however, the absence of a motion for new trial or an evidentiary hearing is not fatal to appellate review where the details relating to the alleged deficiencies of the defendant's trial counsel are sufficiently contained in the record to permit the Court of Appeals to reach and decide the issue.

7. CRIMINAL LAW — TRIAL — APPEAL — ASSISTANCE OF COUNSEL.

A difference of opinion as to trial tactics does not amount to ineffective assistance of counsel, and the Court of Appeals is

reluctant to substitute its judgment for that of trial counsel in matters of trial strategy.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. Foresman,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*William M. Conklin,* for defendant on appeal.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and G. R. COOK,* JJ.

PER CURIAM. Defendant-appellant, James Joseph Cicotte, was found guilty by a jury of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). He was sentenced to a prison term of 30 to 60 years and appeals as of right.

Defendant's first claim is that the search without a warrant of his clothing pockets and the subsequent seizure of evidence from the pockets violated his Fourth Amendment right to be secure from unreasonable searches and seizures.

Immediately after defendant's arrest, his clothing and jewelry were taken from him as is usual in arrests of this nature. Defendant does not contend that this seizure was improper. Rather, defendant argues that the actions of an employee of the Micro-Chemical Unit of the Michigan Department of State Police in removing a feather necklace and black glove from the pockets of defendant's seized clothing constituted an improper warrantless search and seizure. Defendant did not raise this issue before the trial court. However, because a constitutional issue has been raised and the evidence resulting from the challenged search may have been outcome determinative, we will review

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the substantive issue presented. See *People v Guy,* 118 Mich App 99, 102; 324 NW2d 547 (1982), *lv den* 417 Mich 1005 (1983).

In *United States v Edwards,* 415 US 800, 807; 94 S Ct 1234; 39 L Ed 2d 771 (1974), the United States Supreme Court stated:

> "*Caruso [United States* v *Caruso,* 358 F2d 184 (CA 2, 1966), cert den 385 US 862 (1966)] is typical of most cases in the courts of appeals that have long since concluded that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. *This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the 'property room' of the jail, and at a later time searched and taken for use at the subsequent criminal trial.*" (Footnote omitted; emphasis added.)

The italicized portion of the above quotation describes very closely what occurred in the case at bar. See also *People v Brooks,* 405 Mich 225, 247-248; 274 NW2d 430 (1979), where the Michigan Supreme Court considered the implications of *Edwards* when holding that after making a lawful arrest, and while conducting a booking search, the police could unfold and examine a paper the defendant tried to conceal in his sock. The Court indicated it was reasonable for the police to unfold the paper to determine what was being inventoried and to look inside the paper for drugs, contraband, or small dangerous objects. Furthermore, the Court concluded it wasn't really a search because there was no reasonable expectation of privacy and, even if there was a search, it was reasonable.

In *Illinois v LaFayette,* — US —; 103 S Ct 2605; 77 L Ed 2d 65 (1983), the United States Supreme Court held that it is consistent with the Fourth Amendment for police to search without a warrant any container or article in an arrestee's possession as part of an established inventory procedure.

We reject defendant's contention that he had a reasonable expectation of privacy in the items contained in the pockets of his clothing and find that defendant's Fourth Amendment rights were not violated. The search and seizure of evidence was reasonable and lawful.

Defendant's second claim is that he could not be retried after the trial court granted his mistrial motion because his right against double jeopardy was violated due to alleged prosecutorial misconduct.

It appears from the briefs of both parties to this appeal that during defendant's first trial his motion for mistrial was granted by the trial court due to improper and prejudicial answers given by two police witnesses. The cause of the mistrial was twofold. First, Deputy Casselman, one of the arresting officers, testified that during his search for defendant he returned to the police station to obtain a photograph of defendant from his file, thus indicating to the jury that defendant had a record of previous arrests. The second basis underlying the trial court's granting of defendant's motion for mistrial was a statement by Detective Bobier on cross-examination that defendant exercised his right to remain silent after being arrested. In granting defendant's motion for mistrial, the trial court stated: "[N]one of this was done deliberately."

When a mistrial is granted on a defendant's motion, the Double Jeopardy Clause does not bar

retrial unless the defendant's motion was induced by bad faith conduct on the part of the judge or prosecutor. *People v Anderson,* 409 Mich 474, 483; 295 NW2d 482 (1980), *cert den* 449 US 1101 (1981); *People v Peterson,* 113 Mich App 537, 541; 318 NW2d 233 (1982), *lv den* 417 Mich 1051 (1983). We find no evidence in the instant case of bad faith conduct on the part of either the judge or the prosecutor and we conclude that the trial court properly denied defendant's motion to dismiss. A retrial was not barred.

Defendant's last claim is that he was denied the effective assistance of counsel. He argues that defense counsel failed to: (1) move to suppress the evidence in defendant's pockets; (2) investigate a possible alibi; (3) challenge the line-up identification of defendant as the complainant's assailant; (4) challenge the probable cause for arresting defendant; and (5) object to the qualifications of an expert witness.

In *People v Coyle,* 104 Mich App 636, 639; 305 NW2d 275 (1981), *lv den* 415 Mich 851 (1982), we explained the test to be applied to claims of ineffective assistance of counsel:

"In Michigan, the merit of claims of ineffective assistance of counsel is determined by applying a bifurcated test. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977). The first branch of the inquiry focuses on the Sixth Amendment right to counsel, for which the Supreme Court has endorsed the standard established in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974). *People v Garcia, supra,* p 264. To satisfy defendant's right to counsel, his lawyer 'must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.' *Id.* Aside from reviewing the overall performance of counsel, an appellate court

will also examine particular mistakes of counsel to safeguard defendant's right to a fair trial, which is the other branch of the inquiry. For this purpose, the *Garcia* Court adopted the standard developed in *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969):

" 'However, even where assistance of counsel satisfies the constitutional requirements, defendant is still entitled to a fair trial. Defendant can be denied this right if his attorney makes s serious mistake. But a court should not grant a new trial unless it finds that but for this mistake defendant would have had a reasonably likely chance for acquittal.' *Garcia, supra,* p 266."

Defendant argues that the alleged omissions of defense counsel were serious mistakes which negated his reasonably likely chance of acquittal.

In *People v Lawson,* 124 Mich App 371, 373; 335 NW2d 43 (1983), we stated:

"[T]his Court will not review a claim for ineffective assistance of counsel based on allegations not supported by the record where no motion for a new trial or for an evidentiary hearing or a motion for remand has been filed."

However, when the record contains sufficient details relating to the alleged deficiencies in a defendant's representation to allow this Court to reach and address such claims, it will do so. *People v Johnson,* 124 Mich App 80, 88; 333 NW2d 585 (1983).

Defendant made no motion for a new trial, for an evidentiary hearing or for a remand. Therefore, our review of defendant's claim is limited to the present record.

It is the general rule in Michigan that this Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy.

*People v Lotter,* 103 Mich App 386, 390; 302 NW2d 879, *lv den* 412 Mich 852 (1981). As we have already determined that the evidence obtained from defendant's pockets was the result of a lawful search and seizure, we find no merit in claim (1) that defense counsel's failure to move to suppress the evidence was a serious mistake.

We also find no merit in claim (5) that defense counsel's failure to object to the qualifications of the expert witness was a serious mistake. On appeal, defendant does not suggest in what manner the witness's credentials were lacking. The record indicates that the witness, an FBI agent, was thoroughly qualified to testify as an expert in the field of feather identification. Thus, even if defendant's trial counsel had chosen to object, which would have been a matter of trial strategy, such an objection would most assuredly have been overruled. A difference of opinion between defendant and defense counsel on trial tactics does not mean that there was ineffective assistance of counsel. *Lotter, supra,* p 390, citing *People v Penn,* 70 Mich App 638, 648; 247 NW2d 575 (1976).

Our review of the record also indicates that claim (4) is meritless. The police had probable cause to arrest the defendant and any challenge by defense counsel to the existence of probable cause would have been fruitless.

We find claim (3) precluded from appellate review. See *Lawson, supra.* Defendant states that defense counsel should have challenged the line-up identification, but he does not indicate in any manner what procedures might have been improper or suggestive. Furthermore, defense counsel was present throughout the line-up in which the complainant identified the second man from the right as her assailant and counsel cross-examined

the complainant on her observations. Six individuals including defendant participated in the line-up and two photographs of the line-up were submitted to the jury. We believe counsel's decision not to challenge the line-up was that as a matter of practicality there was no cause for challenge.

Finally, we also find claim (2) precluded from review. Defendant argues that defense counsel should have investigated a possible alibi by questioning the store clerk who called a cab for defendant on the night the complainant was assaulted. However, defendant merely asserts that trial counsel's failure to question the store clerk constituted a serious mistake and defendant nowhere suggests that an alibi actually existed. Contrary to defendant's contention, the record indicates that counsel did file a notice of alibi defense.

Defendant's contentions that he was denied effective assistance of counsel are without merit.

Affirmed.