PEOPLE v CASTLE

Docket No. 59957. Submitted March 1, 1983, at Detroit.—Decided
June 6, 1983. Leave to appeal applied for.

Michael B. Castle was found guilty of breaking and entering an
unoccupied dwelling by a jury in Calhoun Circuit Court and
was sentenced, Stanley Everett, J. Defendant appeals, contend-
ing that the trial court erred in denying his motion to suppress
evidence of a gun found during an inventory search of his
automobile and in admitting the gun into evidence. *Held:*

The trial court's ruling that the impoundment of defendant's
automobile was not a pretext to justify a search of the vehicle
and that an inventory search of the vehicle was necessary to
protect the property of the defendant and to protect the police
against unfounded claims or disputes over lost or stolen prop-
erty was not clearly erroneous. Its denial of defendant's motion
to suppress evidence of the gun was therefore justified.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — APPEAL.

A trial court's ruling at a suppression hearing will not be over-
turned unless that ruling is found to be clearly erroneous.

2. CRIMINAL LAW — SEARCHES AND SEIZURES — SEARCH WITHOUT
WARRANT — PER SE RULE — BURDEN OF PROOF.

The state bears the burden of showing that a search was within
an exception to the rule that a search and seizure without a
warrant is per se unreasonable unless shown to fall within one

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 166.
  21A Am Jur 2d, Criminal Law § 785.
[2] 68 Am Jur 2d, Searches and Seizures § 60.
[3] 68 Am Jur 2d, Searches and Seizures §§ 16, 37 *et seq.,* 92 *et seq.,*
  102, 103.
  Validity, under Federal Constitution, of consent to search—Su-
  preme Court cases. 36 L Ed 2d 1143.
  Law enforcement officer's authority, under Federal Constitution, to
  "stop and frisk" person—Supreme Court cases. 32 L Ed 2d 942.
[4, 5] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 103.5, 106.

of the various exceptions to the warrant requirement once a search without a warrant has been shown.

3. CRIMINAL LAW — SEARCHES AND SEIZURES — WARRANT REQUIRE-MENT.

There are six exceptions to the warrant requirement for a valid search or seizure: (1) searches incident to lawful arrests; (2) automobile searches and seizures; (3) plain view doctrine; (4) consent; (5) stop and frisk type searches; and (6) hot pursuit.

4. CRIMINAL LAW — SEARCHES AND SEIZURES — AUTOMOBILES — INVENTORY SEARCHES.

An inventory search of an automobile is valid without a search warrant where impoundment of the vehicle is necessary.

5. CRIMINAL LAW — SEARCHES AND SEIZURES — IMPOUNDED VEHICLES — INVENTORY SEARCHES.

Inventory searches of impounded vehicles are justified where they are conducted to: (1) protect the property while it is in police custody; (2) protect the police from claims of lost or stolen property; or (3) protect the police from potential danger; if the police were justified in impounding the vehicle, a subsequent inventory search is valid.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Conrad J. Sindt,* Prosecuting Attorney, and *Michael J. Berezowsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg),* for defendant on appeal.

Before: BEASLEY, P.J., and V. J. BRENNAN and WAHLS, JJ.

V. J. BRENNAN, J. After a jury trial, the defendant was found guilty of breaking and entering an unoccupied dwelling, MCL 750.110; MSA 28.305. He was sentenced to 60 days in the county jail and 3 years probation. Defendant appeals as of right.

Defendant claims that the trial court erred by admitting into evidence a gun found during an

inventory search of the defendant's car. Initially, the defendant claimed that he was denied effective assistance of counsel because his attorney failed to object to the admission of the gun into evidence. However, the parties have since stipulated that defense counsel was estopped from raising the issue at trial because, in a related case, before the same trial judge, the validity of the inventory search was upheld and the gun was found to be admissible into evidence. The parties have also stipulated that defendant's failure to object to the gun's seizure does not preclude appellate review of this issue.

This case arose from a break-in at the Parkview Tavern in Battle Creek that occurred on June 5, 1980. Some liquor, food, money and a .38 caliber handgun were missing from the bar. The thief evidently escaped by cutting the bolt off of a padlock securing the side door. The padlock, bolt cutters and a flashlight were found lying on the floor next to the open door. These items, along with a bottle found in the vicinity, were all dusted for latent fingerprints. A print found on the flashlight matched one of the defendant's prints.

On June 7, 1980, defendant was stopped while driving his car and arrested on two outstanding warrants. An inventory search disclosed a revolver identified at trial as the one belonging to the owner of the bar. Defendant was charged with the breaking and entering of the bar and with carrying a concealed weapon. These charges were not tried together. However, both cases were heard before the same trial judge. In the carrying a concealed weapon matter, a hearing was held regarding the validity of the search. Defendant's motion to suppress was denied. Subsequently, the defendant pled guilty to the carrying a concealed

weapon charge. The trial in the instant case was held after the guilty plea was taken.

The only witness called at the suppression hearing was Ronald Leo Hattis, the arresting police officer. Hattis testified that he stopped the defendant because he had two felony warrants outstanding. These warrants were issued prior to defendant's involvement in the present case. Hattis watched the defendant and another person, Clarence Bolden, get into defendant's car in a residential area. He followed the car out of the residential area and stopped the defendant in an industrial area bordered by a number of apartment complexes. Defendant was arrested.

Prior to speaking with the defendant, Hattis asked Bolden if he had a valid operator's license. The officer's reason for asking Bolden this question was, "Because I was going to ask Mr. Castle if he wanted to release his vehicle." When the officer found out that Bolden did not have a license, he impounded defendant's car. It was the subsequent inventory search of the car that disclosed the revolver. The officer used a standard inventory form during the search and the contents of the car were emptied into an envelope. The officer remained with the car until it was towed. Bolden was allowed to leave the scene.

On cross-examination, Hattis revealed that he was not sure whether or not the car was legally parked. He was, however, sure that the car posed no traffic hazard. The officer also testified that defendant asked to have his vehicle locked and parked on the street sometime after the vehicle had been impounded. He further testified that he impounded the vehicle because there was nobody present to take custody of it and it would have been left unattended on a city street. The decision

to impound a vehicle is left with the discretion of the arresting officer and it was his decision to impound the vehicle.

Following this testimony, the trial court ruled that the impoundment was not a pretext to justify the search. The court also found the search was necessary to protect the property and to protect the police against unfounded claims or disputes over lost or stolen property.

A trial court's ruling at a suppression hearing will not be overturned unless that ruling is found to be clearly erroneous. *People v Rocha,* 110 Mich App 1, 10; 312 NW2d 657 (1981), *lv den* 413 Mich 912 (1981); *People v Erskin,* 92 Mich App 630, 642; 285 NW2d 396 (1979); *contra People v McIntosh,* 110 Mich App 139, 146; 312 NW2d 415 (abuse of discretion). Once a warrantless search has been shown, the state bears the burden of showing that the search is within an exception to the rule. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975); *People v White,* 392 Mich 404; 221 NW2d 357 (1974).

In *People v Dugan,* 102 Mich App 497, 503; 302 NW2d 209 (1980), this Court found: "[a] warrantless search and seizure is per se unreasonable unless shown to fall within one of the various exceptions to the warrant requirement." See, also, *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). There are six exceptions to the warrant requirement recognized by the Court: (1) searches incident to lawful arrests; (2) automobile searches and seizures; (3) plain view doctrine; (4) consent; (5) stop and frisk type searches; and (6) hot pursuit. See *People v Nash,* 110 Mich App 428, 458; 313 NW2d 307 (1981) (J. T. Kallman, J., *concurring partially), lv gtd* 414 Mich 869 (1982).

This Court has recognized the validity of an

inventory search of an automobile when impoundment of the vehicle is necessary. *Rocha, supra,* p 11; *People v Kramer,* 103 Mich App 747, 760-762; 303 NW2d 880 (1981).

However, this Court has struck down inventory searches when it has concluded that the inventory was a mere pretext for an investigation rather than a normal police procedure which could not be upheld under the Supreme Court's decision of *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976). See *People v Siegel,* 95 Mich App 594, 605; 291 NW2d 134 (1980). In *Siegel,* the defendant's car was parked on private property, the driveway of a vacant house, with the doors locked. The defendants were apparently on the premises to examine the abandoned house because one of them was considering buying it. The *Siegel* Court found no valid reason to impound a locked automobile which was legally parked on a private driveway. There was no reason, other than the investigation, to search the automobile. The Court concluded that the impoundment and subsequent inventory search was a mere pretext for an investigation rather than normal police procedure.

In *Siegel, supra,* p 603, the Court quoted *Opperman* to show in what circumstances such a search would be justified:

" 'In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady v Dombrowsky,* 413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973), automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will * * * frequently remove and impound automobiles

which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.' 428 US 368-369."

The *Siegel* Court found that once the vehicle was impounded, inventory searches are justified to: (1) protect the property while it is in police custody; (2) protect the police from claims of lost or stolen property; and (3) protect the police from potential danger. *Siegel, supra,* p 603; see also *People v Merchant,* 86 Mich App 355, 361; 272 NW2d 656 (1978). If the police were justified in impounding the automobile, then the subsequent inventory search must be upheld.

This Court has considered a situation comparable to the present case in *People v McIntosh, supra.* In *McIntosh,* the defendant's vehicle was left parked in a church parking lot. The Court noted that the vehicle did not impede traffic nor was it on property under the defendant's control. While considering this particular problem, the Court cited *United States v Staller,* 616 F2d 1284 (CA 5, 1980). *Staller* involved the impoundment and search of a vehicle which was lawfully parked in a shopping mall. The *McIntosh* Court, relying upon *Staller,* found that, while the defendant's vehicle was not blocking a public thoroughfare, it was left unattended in a private parking lot with its contents subject to a great danger of theft or destruction. In that case, as is the case here, the record does not disclose whether the defendant, if requested, could have made independent arrangements to secure the car. In the present case, the defendant did state later that he would have preferred to have the officer leave the car locked and

parked on the street. After the defendant was arrested, the officer, at first, made arrangements with Bolden, the passenger in defendant's car, to have him drive the car away. It was only when the officer discovered that Bolden did not have a valid operator's license that he impounded the vehicle. Under these circumstances, the trial court was justified in finding that the impoundment was not a mere pretext for the subsequent inventory search.

The Court in *McIntosh* concluded that even a short period of inattention could have left the defendant's vehicle open to theft or vandalism. Because the vehicle in that case was routinely impounded, the Court upheld the subsequent inventory search and the evidence resulting from the search was found to have been properly admitted by the trial court. The same is true in the present case. Here, the officer followed the standard inventory procedure. While the decision to impound was left to the discretion of the individual officer, his decision was based upon grounds previously recognized as being legitimate by this Court. Under these circumstances, we find that the trial court's denial of defendant's motion to suppress was not clearly erroneous.

Affirmed.